UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:19-cr-133-TJC-PDB

HENRY OBDULIO CORDON

_____

### SENTENCING MEMORANDUM

Defendant, Henry Cordon, by and through undersigned counsel, files this Sentencing Memorandum for this Court's consideration in anticipation of the Sentencing Hearing set for Wednesday, October 23, 2024, at 2:00 PM. Submitted along with this Memorandum are Exhibits filed under seal, including medical records, jail and prison records, educational records, and other relevant records.

### Introduction

Mr. Cordon pled guilty to Count I, pursuant to a plea agreement that includes a recommendation that the sentence Mr. Cordon receives be made concurrent to the sentence he received in United States District Court for the Northern District of California case no. 4:19-cr-00248-JSW. Count I is punishable by a minimum of 15 years and a maximum of 30 years in prison. Any imprisonment is to be followed by a minimum of five years and a maximum of life on supervised release. The advisory guidelines applicable to this case result in a Total Offense Level of 43 and a Criminal History Category of III, leading to an advisory sentence of 360 months (30 years) in prison.

1

Mr. Cordon respectfully requests that this Court vary from the guidelines and sentence him to the statutory mandatory minimum of 180 months (15 years) in the Bureau of Prisons, concurrent with the sentence imposed in the United States District Court for the Northern District of California case (hereinafter "California federal case"). The proposed sentence would be sufficient to punish Mr. Cordon for his actions in this case, while taking into consideration Mr. Cordon's pending sentence in the California federal case, his pending sentence in the Superior Court of Contra Costa County case (hereinafter "California state case"), and his probable deportation from the United States after all sentences are completed.

## Mr. Cordon's Cases and Timeline

The following chronology is based on undersigned's review of various court records, including some that were provided in discovery, as well as the Presentence Report. In July 2011, Mr. Cordon committed the offense in the instant case. In September 2017, he committed the offenses in the California State case. In April 2019, he committed the offenses in the California federal case. He was indicted and arrested for the California federal case in May 2019. The investigations in that case led to the Indictment in the instant case and the Indictment in the California state case in August 2019.

In February 2020, Mr. Cordon pled guilty to the charges in the California federal case. In September 2020, he was sentenced in that case to 78 months (6.5 years) in the Bureau of Prisons, followed by 10 years of supervised release. In December 2020, via writ, Mr. Cordon was transferred to state custody to deal with his California

state case. At the time of this transfer, Mr. Cordon had served approximately 16 months (1 year, 4 months) in federal custody since his initial arrest. Starting in December 2020, Mr. Cordon was in the custody of the Sheriff of Contra Costa County, California, awaiting resolution of his state case.

After a jury trial, he was convicted and sentenced by the Superior Court judge on August 12, 2022. The judge sentenced him to a total of 13 years in the California Department of Corrections and Rehabilitation ("CDCR"). The court determined that Mr. Cordon had 611 days credit time served at the time of sentencing. There is no indication in the sentencing paperwork or transcripts that the court intended for the sentence in the California state case to run concurrent with the sentence in the California federal case. Therefore, it is undersigned counsel's understanding that Mr. Cordon must serve both sentences separately.

Shortly after being sentenced in the California state case, Mr. Cordon was transferred to the custody of the CDCR and designated to the Pleasant Valley State Prison in Coalinga, California. Since that time, he has been serving his state sentence. He was not transferred back to federal custody to finish serving the sentence in the California federal case, which had primary jurisdiction over him. Nor was he transferred to federal custody to be arrested and initially appeared on the Indictment in the instant case. This was apparently due to administrative errors. Mr. Cordon continued serving time in state custody until he appeared in federal court for the instant case, via another writ, on February 22, 2023.

According to the CDCR, and assuming that Mr. Cordon is currently "serving" his state sentence at this time, his release from state prison will occur no later than September 7, 2033. Without going too much into the complexities of California sentencing calculations and gain time policies, Mr. Cordon is reportedly eligible to apply for parole as early as December 31, 2029 (about 9 years into his sentence). However, the nature of his California convictions may make parole unlikely. Based on undersigned's research, it appears more likely that Mr. Cordon will have to serve about 85% of his California sentence.

It is not clear what will happen after the sentence in this case. Mr. Cordon will either return to state custody to finish serving the state sentence or remain in federal custody to begin serving the sentence in the California federal case. Either way, he will have to serve 6.5 years (minus credit time and gain time) in federal prison and 13 years (minus credit time and gain time) in state prison. A sentence of 15 years in the instant case, made concurrent to the other federal sentence, would still result in substantial additional time in prison for Mr. Cordon. This is especially true given that his current incarceration is not earning him credit time served in the instant case.

After Mr. Cordon completes his state and federal prison sentences, undersigned counsel believes that he is likely to be deported to Guatemala, a country he has not been to since he was two years old. Mr. Cordon is not a citizen of the United States. Instead, he is a lawful permanent resident (a "green card" holder). According to the Immigration and Naturalization Act ("INA"), Mr. Cordon's convictions make him a deportable alien. *See* 8 U.S.C. § 1227(2)(A)(ii) ("Any alien who at any time after

admission is convicted of two or more crimes involving moral turpitude . . . is deportable."); 8 U.S.C. § 1227(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); and 8 U.S.C. § 1227(2)(E) ("Any alien who at any time after admission is convicted of . . . a crime of child abuse . . . is deportable."). *See also United States v. Santacruz*, 563 F.3d 894, 897 (9th Cir. 2009) (child pornography offenses are crimes involving moral turpitude); 8 U.S.C. § 1101(a)(43)(I) (child pornography offenses are aggravated felonies); and *Salmoran v. Att'y Gen. United States*, 909 F.3d 73, 83 (3d Cir. 2018) (child pornography offenses are crimes of child abuse).

### Mr. Cordon's History

An examination of Mr. Cordon's past is essential to deciding an appropriate sentence in this case. While Mr. Cordon's adverse childhood experiences do not excuse his criminal conduct, they put into context his behavior and therefore can guide this Court in determining what sentence is sufficient but not greater than necessary to meet the goals of federal sentencing. "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 788–89 (1982) (Rehnquist, J., dissenting). The records show that Mr. Cordon was a victim of horrific physical, sexual, and emotional abuse as a child.

Mr. Cordon was born in Guatemala and his family moved to the United States when Mr. Cordon was only two years old. His parents separated when he was four years old. After the separation, he initially lived with his mother and sister, and the

three of them repeatedly moved. Mr. Cordon lived in about six different cities in California throughout his youth. He lived with several different family members, including at times with his father. The constant moving from one place to another led to sense of instability and resulted in repeated interruptions to his education. He attended four different elementary schools, one middle school, and three different high schools. The main impetus for Mr. Cordon's mother moving them around so much was to avoid repeated domestic abuse at the hands of Mr. Cordon's father.

Mr. Cordon's father, Fredy Cordon, was an alcoholic with a penchant for violence and sexually predatory behavior. It did not help that the Guatemalan culture he was a product of is one that encourages a "machismo" mentality and is structured with well-defined gender roles and responsibilities.[1] Fredy embraced a toxic sense of masculinity to the fullest, and acted aggressively towards those he was supposed to care for. Fredy would repeatedly and mercilessly beat Mr. Cordon's mother, Alicia. However, Alicia felt she had no legal recourse because, at the time of the abuse, nobody in the family had legal status in the United States.

At one point several years after his parents initially separated, Alicia and her two children moved into the residence of Mr. Cordon's paternal grandparents. Fredy resided in a separate apartment on the property, so it was as if Alicia and him never separated, and he was able to continue abusing his children in a multitude of ways. Fredy was violent, and that violence was exacerbated by his heavy drinking. Fredy

---

[1] *See* Judith L. Gibbons, *The Diverse Worlds of Guatemalan Youth: Family, Faith, Ethnicity, Gender, and Challenges*, CARIBBEAN J. OF PSYCHOLOGY 14 (1), 1–36 (Jan. 1, 2022).

beat Mr. Cordon frequently, sometimes knocking him to the floor and drawing blood. One beating occurred because Fredy was upset that Mr. Cordon did not know where his sister Karla was. After that beating, other family members had to intervene and physically remove Fredy from the residence.

On two separate occasions, Mr. Cordon and Karla witnessed Fredy use firearms in threatening ways. At their grandparents' home, there was an incident where Fredy pointed a firearm at Karla and other family members during an argument. Another incident, when Mr. Cordon was about nine years old, was especially traumatizing for the siblings. Mr. Cordon and Karla were watching TV and heard gunfire coming from their Alicia's bedroom. Although very scared, the children bravely ran into the room out of concern for their mother. When they entered the room, they found Fredy pointing a shotgun at Alicia. The rug on which Alicia was standing was shredded from the shotgun pellets.

To make matters worse, Fredy also sexually abused Mr. Cordon and Karla. Karla was the main target of Fredy's sexual predation. From the time she was five years old until she was ten years old, Fredy raped Karla on at least three different occasions. He also molested and touched her inappropriately on numerous other occasions throughout that time. Once, Mr. Cordon witnessed the molestation of his sister when he walked into the room. Fredy also molested Mr. Cordon on several occasions.

The victims of Fredy's sexual abuse were not limited to family members. In 2013, while living in Long Beach, Fredy was arrested and charged with four counts of

7

sexual abuse of a child ten years old or younger. The victim lived in the same neighborhood. He was released on bond pending resolution of the case. While the case was pending, he started to feel some remorse about the years of abuse he inflicted on his own children. At one point, he called Karla and apologize for sexually abusing her and Mr. Cordon. Then, in June of 2014, in one final act of traumatizing his family, Fredy committed suicide by hanging himself with rope tied to a beam on the porch of his mother's home.

     Mr. Cordon was physically and sexually abused by other family members as well. He was shy, timid, and of small stature, making him an easy target for bullying and abuse by the predators in his family. He was sexually abused by two of his uncles (the brothers of his father). When he was twelve years old and living with his paternal grandparents, he had his very first sexual experience when an uncle crawled into his bed and molested him. Several months later, another uncle did the same thing. When the young Mr. Cordon reported this to his mother, she did not believe him. One of the uncles also sexually abused Karla.

     His paternal grandmother, Elfida Morales, did not do anything to protect Mr. Cordon, and in fact her treatment of him was also sexually and physically abusive. On one occasion, Mr. Cordon screamed for help when an uncle had just fondled him in bed. Elfida immediately accused him of lying and struck him. Elfida also touched Mr. Cordon inappropriately at times, paying an abnormal amount of attention to her grandson's penis. She would grab and kiss it, referring to it as "cute." When Mr. Cordon was about eight years old, Elfida and the uncles encouraged Mr. Cordon to

put his penis through a hole in the neighboring fence and urge the young girl next door to touch it. The adults thought it was funny and a completely normal part of Mr. Cordon becoming a man.

Elfida and the uncles verbally and physically abused Mr. Cordon. Mr. Cordon's Aunt Rita, who was married to one of his uncles, witnessed a lot of questionable behavior at the household. She commented that Mr. Cordon "was the family punching bag," and that everyone in the family laid hands on him. She once witnessed Elfida punch Mr. Cordon in the head repeatedly with her fists. Elfida punched him on the right side of his head, causing his head to moved to the left, and then she would punch him with her left fist. On a separate occasion, Elfida held Mr. Cordon down on the carpeted floor and rubbed his face on the carpet, while saying to him, "I hate you." Rita also recalls that the children were not fed very much, often only given the "scraps" after the adults were done eating.

It is undeniable that the Mr. Cordon appearing before this Court is a product of years of horrendous abuse at the hands of his own family. The only people in his life who cared for him – his mother and sister – were limited in their ability to protect him from adversity. His mother was married to his primary abuser, she was reticent to seek help from law enforcement, she had no money, and she had no options on where to place Mr. Cordon aside from with his paternal family. His sister was also victimized by family members and was powerless to protect her younger brother. Mr. Cordon suffered from an incomprehensible level of abuse from numerous family members and

as a result is a broken man. As his Aunt Rita states, "The way that little boy was mistreated, I'm not surprised he is where is at now."

### Experience While Incarcerated

Another factor that this Court should consider in determining an appropriate sentence for Mr. Cordon is the severity of punishment that imprisonment inflicts on those convicted of sexual offenses. Mr. Cordon will be among the most disliked offenders in prison. It is a well-known fact – one recognized by the Bureau of Prisons – that sex offenders are a vulnerable population in prison. Mr. Cordon's experience during his current incarceration at the Baker County Detention Facility is direct evidence of this. As shown in the Exhibits, according to the U.S. Marshals, on June 3, 2024, Mr. Cordon was "beat up" by other inmates at the jail. He was taken the hospital and needed surgery for his broken jaw. He required follow-up care after surgery and continues to experience pain. While this Court is without power to control the behavior of other inmates or BOP employers, it can consider the effects of incarceration when deciding whether a 15-year federal prison sentence is sufficient and not greater necessary punishment for Mr. Cordon.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
Federal Defender, MDFL

*s/ Scott T. Schmidt*
Scott T. Schmidt, Esq.
Assistant Federal Defender
Florida Bar No. 92534

>200 West Forsyth Street, Suite 1240
>Jacksonville, FL 32202
>Telephone: (904) 232-3039
>Fax: (904) 232-1937
>Email: scott_schmidt@fd.org

11